hBYRNES, Judge.
Kenneth Corley appeals his conviction for first degree murder. We affirm.
The defendant was indicted for first degree murder while engaging in the perpetration or attempted perpetration of aggravated burglary in violation of La.R.S. 14:30. The defendant entered a plea of not guilty and not guilty by reason of insanity. After a lunacy hearing, the defendant was found to be competent to stand trial.
Trial commenced on January 29, 1991. New Orleans Officer Brian Monteverde testified that he responded to a call complaining of criminal damage at about 7:00 a.m. on July 10,1989. Arriving at the residence of Isabella Martinez at 1914 General Taylor Street, Officer Monteverde spoke to Mrs. Martinez and observed that the front door had been tampered with but still could be locked.
Later that day, Officer Monteverde assisted Officer Kilbride in response to another report of a woman screaming for help at the same address. When Officer Monteverde arrived, the defendant had already been apprehended and Rheld in the rear of the house. Officer Monteverde did not see the defendant enter or come out of the house although he saw that the front door was broken open. Officer Monteverde and Officer Michael J. Kilbride found Mrs. Martinez upstairs naked and severely beaten in a pool of blood. Ms. Martinez told the officers that she was dying.
Officer Kilbride who was the first officer to respond to the second call, testified that he saw the front door broken open. The officer was going upstairs when he heard and then saw the defendant running down the stairs. Officer Kilbride struggled with the defendant who escaped out of the front door. Officers Kilbride and Michael Caesar subsequently apprehended the defendant who was sweaty, had blood stains on his clothes, and was barefoot. Upon returning to the house, Officer Kilbride and Officer Monteverde found Mrs. Martinez upstairs.
Rodney Reed, Mrs. Martinez’s next-door neighbor, testified that he heard moaning, went outside on the porch and called the police when he heard Ms. Martinez asking for help. Mr. Reed saw the defendant running out of the house after Officer Kilbride went inside. Mr. Reed recognized and identified the defendant who had lived with his family in the neighborhood for approximately 16 years.
Detective Daniel Tavlin testified that he confiscated the physical evidence, including the defendant’s clothing and blood samples.
Dr. James Elston, an expert in the field of forensic pathology, performed the autopsy. He testified that the cause of death was a pelvic fracture with internal bleeding, a laceration of the vaginal and anal area, multiple rib fractures, and chest bleeding. The victim had suffered multiple cuts and bruises Rover her entire body. Dr. Elston stated that the *724 injuries were consistent with someone having inflicted them with his hands and feet.
Officer Charles Krone, an expert in examination and testing of bodily fluids, could not connect any samples to the defendant or the victim because the blood samples were too small to allow for blood typing.
Called as defense witnesses, Judge Leon Cannizzaro and his minute clerk, Nat Comar-da, testified that Judge Cannizzaro had been contacted by Feliciana Forensic Facility on July 9, 1989, the day before the murder, because the defendant failed to return from his pass. The Feliciana staff requested that the court issue a warrant for the defendant’s arrest because he could be dangerous without his medication. With the judge’s instructions, Mr. Comarda attempted to have the Sheriffs office pick up the defendant.
The defense presented expert testimony from Dr. Aris Cox, Dr. Henry Braden, and Dr. William Super, along with the stipulated testimony of Dr. Ciro Juarez, that the defendant was psychotic and unable to distinguish between right and wrong at the time he allegedly committed the crime and was therefore legally insane.
Dr. Cox began treating the defendant in 1988 at Feliciana Forensic Facility and diagnosed that the defendant was suffering from schizo-affeetive illness. The defendant had been off anti-psychotic medication since December 1988 and had been on passes previously without incident. Dr. Cox testified that at the time of the commission of the crime, the defendant was overdue to return from a pass from Feliciana. Dr. Cox agreed that drugs were a cause in part of the defendant’s mental illness that caused him to become psychotic.
| ¿¡Prior to trial after the district court denied the defendant’s motion for continuance based on Dr. Ciro Juarez’s absence, the state and defense stipulated to Dr. Juarez’s testimony. Dr. Juarez opined that the defendant was legally insane at the time of the commission of the crime. Dr. Juarez also stated that: “the [drug] tests performed under the name of Kenneth Corley were mislabeled. In fact, Kenneth Corley did not test positive for cocaine at any time while in Orleans Parish Prison since his arrest on July 10, 1989. No tests for cocaine were performed on Kenneth Corley since his arrest.”
Barbara Mathews, a nurse at Feliciana, and Dr. Alan Appelbaum, a clinical psychologist, testified as rebuttal witnesses for the state. Ms. Matthews stated that she had been part of the defendant’s treatment team for two weeks prior to his release on a pass on July 2, 1989. She testified that she had not noticed that the defendant had any signs of mental illness although he was upset over his father’s heart attack. Ms. Mathews was not the staff member who called Judge Can-nizzaro.
As leader of the defendant’s treatment team at Feliciana, Dr. Appelbaum began working with the defendant in March 1988. Dr. Appelbaum recommended passes for the defendant and last saw him in June 1989. Dr. Appelbaum stated that the defendant knew right from wrong and was not schizophrenic or psychotic at the time of the crime. Dr. Appelbaum’s opinion was based on the fact that the defendant functioned without psychotic medicines for relatively long periods of time, and most chronic schizophrenics could not function as well as the defendant. Dr. Appelbaum also opined that the defendant had a serious substance abuse disorder, and any psychotic events were caused by alcohol or drugs.
jy^After a three-day trial, the twelve-member jury found the defendant guilty as charged and recommended a sentence of life imprisonment. On March 15, 1991 the trial court sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The trial court granted the defendant an out-of-time appeal on November 10, 1992.
On appeal the defendant contends that the trial court erred in: (1) denying the motion for continuance based on an absent witness, Dr. Ciro Juarez; and (2) admitting irrelevant, immaterial, and inflammatory testimony into the record. The defendant also requests a review for errors patent.
Initially, the defendant argues that the testimony of Dr. Juarez was critical as the leading physician who was treating the *725 defendant after his July 1989 arrest. The defendant asserts that he met the criteria for the request for a continuance under La. C.Cr.P. art. 709[1] on the showing that: Dr. Juarez was timely subpoenaed for trial and agreed to the trial date; Dr. Juarez left town without the Court’s permission; and Dr. Juarez would be able to testify after February 6, 1991.
The trial court’s broad discretion to deny a continuance will not be disturbed absent a clear showing of specific prejudice demonstrating an abuse of that discretion. State v. Holmes, 590 So.2d 834 (La.App. 4 Cir.1991).
The defense and state stipulated that Dr. Juarez, qualified as a medical expert, would state:
le ... as Kenneth Corley’s treating physician in Orleans Parish, since at least July 10th, 1989, it is his opinion that Kenneth Corley was legally insane at the time of the commission of the charged offense in this case. That Dr. Juarez would further testify that the tests performed under the name Kenneth Corley were mislabeled. In fact, Kenneth Corley did not test positive for cocaine at any time while in Orleans Parish Prison since his arrest, July 10th, 1989. No tests for cocaine were performed on Kenneth Corley since his arrest.
The defense presented the testimony of Drs. Cox, Braden, and Super who referred to the notes of Dr. Juarez and opined that the defendant was psychotic and unable to distinguish between right and wrong at the time of the offense. Dr. Juarez’s testimony was cumulative of the other expert testimony presented by the defendant. The stipulation adequately covered the information to which Dr. Juarez would testify. The defense did not show any specific prejudice to the defendant, and the trial court did not abuse its broad discretion in denying the continuance and providing the stipulation pursuant to La. C.Cr.P. art. 710.[2]
The defendant also maintains that the trial court erred in admitting irrelevant, immaterial and inflammatory testimony into the record. In particular, the defendant claims that testimony concerning the defendant’s past drug use and the manifestation of psychotic episodes after he took narcotics should have been excluded as any relevance would be outweighed by unfair prejudice, confusion of the issues, or would mislead the jury under La.C.E. art. 403.
|7In several instances, the defense did not object to references of drug use creating a psychotic state so that those references cannot be reviewed on appeal. La.C.Cr.P. art. 841; State v. Spotville, 583 So.2d 602 (La. App. 4 Cir.1991), writ denied 585 So.2d 577 (La.1991).
The defendant argues that any reference to drug abuse was irrelevant because of the stipulation that the defendant was not on drugs at the time of the incident in July 1989. However, the defendant’s past drug use was relevant as it served as a basis for Dr. Ap-pelbaum’s opinion that the defendant was not psychotic. He diagnosed the defendant as having a serious substance abuse disorder rather than being schizophrenic or psychotic. He testified that he doubted that the defendant had a psychotic event that was not precipitated by drugs and/or alcohol ingestion.
Further, in his brief the defendant does not allege any prejudice from the prosecutor’s questions regarding the mislabeling of the drug testing. Even if the defendant had *726 referred to this claim, the trial court sustained objections to references to the blood test and reminded the jury that the stipulation stated that Dr. Juarez could testify that the tests performed under the name of Kenneth Corley were mislabeled, that the defendant did not test positive for cocaine, and that no test was taken. Any error in the trial court’s rulings was harmless and did not prejudice the defendant’s right to a fair trial.
A review of the record reveals no errors patent.
Accordingly, the defendant’s conviction is affirmed.

AFFIRMED.

. La.C.Cr.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.

. La.C.Cr.P. art. 710 provides:
When a motion for a continuance is based on the absence of a material witness, and the adverse party admits that if the witness were present he would testify as stated in the motion, the court may proceed to the trial of the case. If the court is of the opinion that despite the admission, the case cannot be tried with justice to the applicant, it may require the adverse party to admit also the truth of the testimony as a condition of refusing to grant the continuance.